IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TARA AILEEN STOTTLEMYER,<br><br>Defendant. | DOCKET NO. 21-CR-334 |

**MOTION TO MODIFY TERMS OF SUPERVISED RELEASE**

Tara Aileen Stottlemyer, by and through her counsel of record, Assistant Federal Defender Myra Cause, respectfully requests that this Court, pursuant to 18 U.S.C. § 3145(a) modify the terms of supervised release in her case. As grounds therefore, it is averred:

1. Ms. Stottlemyer last appeared before this Court on September 21, 2021 for an initial appearance. Ms. Stottlemyer originally came before the Court in the Western District of North Carolina (WDNC) on September 14, 2021. At that time, the Western District of North Carolina granted conditions of release for Ms. Stottlemyer. [1]

---

[1] Ms. Stottlemyer's indictment alleges violations of 18 U.S.C. § 231(a)(3) (Civil Disorder); 18 U.S.C. § 111(a)(1) (Assaulting, Resisting Certain Officers or Employees); 18 U.S.C. § 1512(c)(2), 2 (Obstruction of an Official Proceeding); 18 U.S.C. § 661 (Theft of Personal Property Within Special Maritime and Territorial Jurisdiction); 18 U.S.C. § 1001(a)(2) (False Statements); 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds); 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds); 40 U.S.C. § 5104(e)(2)(A) (Entering and Remaining on the Floor of Congress); 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building); and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building).

2. Ms. Stottlemyer respectfully requests to have her conditions of release modified to allow her to possess a firearm.[2] Ms. Stottlemyer resides in rural North Carolina with her husband. They have a working farm where they raise livestock. The court imposed new conditions of supervision for Ms. Stottlemyer, including: "The defendant must not possess a firearm, destructive device, or other weapon." Doc. 34.

3. Ms. Stottlemyer respectfully requests modification of her firearm condition, in order to accommodate her farming obligations.

4. Ms. Stottlemyer respectfully submits that the firearm restriction impedes her ability to protect her livestock. Ms. Stottlemyer requests that she be able to possess a firearm for the safekeeping of her livestock and healthy functioning of her farm.

5. The modification complies with the §3553 factors. First, as previously stated, Ms. Stottlemyer resides with her husband on a farm in rural North Carolina. The condition precluding Ms. Stottlemyer from possessing a firearm is standard in the Western District of North Carolina. That request did not originate with the government. Indeed, according to most recent statistics, WDNC has the second-lowest rate of release on bond in the nation- with a national average of 49%, the rate of release here is 25%. In other words, Ms. Stottlemyer has been subjected to disproportionately and unnecessarily strict conditions of release by pure accident of geography and local practice. The modification does not remove the remaining conditions, which restrict her ability to travel outside of the WDNC. It thus still provides a significant deterrent and reflects the seriousness of her alleged offense. 18 U.S.C. §3553(a)(2)(A) and (B). Second, the modification continues to protect the public, because Ms. Stottlemyer remains subject to

---

[2] The conditions of release set by the WDNC are attached as Exhibit 1.

supervision of her probation officer. 18 U.S.C. §3553(a)(2)(C). Third, the modification ensures that Ms. Stottlemyer will continue with her full-time farming livelihood. 18 U.S.C. §3553(a)(2)(D). The requested modification also satisfies the requirement that any condition for supervised release involve no greater deprivation of liberty than reasonably necessary. *United States v. Armel*, 585 F.3d 182, 186 (4th Cir. 2009); 18 U.S.C. § 3583(d)(2); U.S.S.G. § 5D1.3 (b).

6. Ms. Stottlemyer and her husband rely on their gains from farming to support their livelihood. They own a regenerative farm, meaning they work with nature to enhance it. They do this by having the birds (chickens, ducks, and turkeys) that they raise out on pasture. Chickens will poop approximately 50 times a day, and their manure is good for the land. However, too much of it is detrimental. To prevent damage to the soil, they move the birds onto new ground every few days. They do this by using portable shade structures that are on wheels, which they pull forward onto the new grass. The electric net fencing they use is portable as well. The electric netting is their primary way of keeping predators out. While it is designed to deliver an electric shock to animals trying to get in, it is not 100% effective. When predators get hungry (especially going into winter) they are willing to endure more pain to catch their prey. Once a predator knows where an easy meal is, it will not stop until their prey are gone, or the predator is gone. Raccoons especially will kill for fun, so instead of just coming out to one dead bird that a raccoon killed and ate, it is possible to come out to more than twenty dead chickens that were killed indiscriminately, and left to rot. Indeed, Ms. Stottlemyer and her husband have lost more than twenty dead birds on more than one occasion. They do their best to keep the fence as "hot" as possible, but in the end, only killing the raccoon solved the nightly killings. Raccoons are not the only predator that try to get their birds. They also have roaming packs of coyotes that can

also do a ton of damage in one night. This is both emotionally, and financially devastating for Ms. Stottlemyer and her husband. They raise these birds from the time they are two days old and take their responsibility to take care of the birds very seriously. Financially, it is equally devastating. Depending on the species, Ms. Stottlemyer and her husband bring in between over $20 for chickens and $120 for turkeys dollars, per bird. As such, loosing over twenty birds a night at rate of over $20 per bird, is a devastating financial loss. In just one week they could lose over $3,000 in revenue. On top of that, they lose the thousands of dollars that they spent on feed, and purchasing the chicks. Undoubtedly, Ms. Stottlemyer's livelihood, as well as the lives of her family's animals, are very dependent on their ability to have firearms.

6. As a result, Ms. Stottlemyer respectfully requests that the Court modify her conditions of supervision to allow her to possess a firearm. This modification will allow her maintain her farm, which supports her family.

7. Counsel has communicated with the assigned Assistant United States Attorney, Anthony Franks, who has advised that the government opposes this motion.

**WHEREFORE,** Tara Aileen Stottlemyer respectfully requests modification of her terms of supervision.

Respectfully submitted:

    s/ Myra Cause
Myra Cause, Fl Bar #0108032
Assistant Federal Defender
Attorney for Tara Stottlemyer
Federal Defenders of Western North Carolina, Inc.
129 West Trade Street, Suite 300
Charlotte, NC 28202
(704) 374-0720 (phone)
(704) 374-0722 (fax)
myra_cause@fd.org